# EXHIBIT A

SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services and the North Carolina Office of the Attorney General (collectively, the "Government"), The Charlotte-Mecklenburg Hospital Authority and Mark McGuire (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A. The Charlotte-Mecklenburg Hospital Authority (hereinafter Defendant) is a non-profit hospital authority organized under the laws of North Carolina with a principal place of business in Charlotte, North Carolina. Defendant does business under the name of Carolinas HealthCare System. In addition to its owned facilities, Defendant manages or has managed a number of other healthcare providers (the "Contracted Hospitals") (listed in Exhibit A).

B. On April 6, 2015, Mark McGuire (hereinafter "Relator") filed a *qui tam* action in the United States District Court for the District for the Western District of North Carolina captioned *United States of America and the State of North Carolina ex rel. Mark McGuire v. The Charlotte-Mecklenburg Hospital Authority, et al.* (Case No. 3:15-cv-147) pursuant to the *qui tam* provisions of the United States False Claims Act, 31 U.S.C. § 3730(b) and the North Carolina False Claims Act, N.C.G.S. § 1-608(b) (the "Civil Action"). On June 27, 2017, Relator filed his Amended Complaint in the Civil Action. Relator alleged that Defendant submitted false claims to government healthcare programs for urine drug testing. Specifically Relator alleged that Defendant used an incorrect billing code that resulted in higher reimbursement from Medicare and Medicaid than Defendant was entitled to for the tests that it conducted.

C.  The Government contends that Defendant submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

D.  The Government contends that it has certain civil claims against Defendant for submitting false claims and causing the submission of false claims by hospitals under management contracts with Defendant as listed in Exhibit A.

E.  The Government contends the following:

   (1) During the relevant time period, urine drug tests were classified by the Food and Drug Administration ("FDA") as either waived, moderate, or high complexity pursuant to certain criteria under the Clinical Laboratory Improvement Amendments ("CLIA").

   (2) From January 1, 2011, to December 31, 2015, claims for tests classified as CLIA moderate complexity should have been submitted with Healthcare Common Procedure Coding System ("HCPCS") code G0434, and claims for tests classified as CLIA high complexity should have been submitted with HCPCS code G0431.

   (3) From January 1, 2011, to December 31, 2015, Defendant and the Contracted Hospitals conducted CLIA moderate complexity tests, but submitted CLIA high complexity testing claims (G0431) for these tests, causing Defendant and certain Contracted Hospitals to obtain higher payment than they should have received for those tests.

This conduct recited above in Paragraph E is referred to below as the "Covered Conduct."

F.  This Settlement Agreement is neither an admission of liability by Defendant nor a concession by the Government that its claims are not well founded. Defendant denies the allegations of the United States and Relator and denies that it engaged wrongful conduct related to the Covered Conduct or that it retaliated against the Relator.

G.  Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.  Defendant shall pay to the United States six million five hundred thousand dollars ($6,500,000.00) (the "Settlement Amount") no later than 15 business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of North Carolina.

2.  Conditioned upon the United States receiving the Settlement Amount from Defendant and as soon as feasible after receipt, the United States shall pay the State of North Carolina an amount determined in accordance with the State share of Medicaid program damages.

3.  Conditioned upon the United States receiving the Settlement Amount from Defendant and as soon as feasible after receipt, the United States shall pay one million three hundred sixty five thousand dollars ($1,365,000.00) to Relator by electronic funds transfer.

4(a).  In full satisfaction of any expenses, legal fees, or costs that may be due Relator or his attorneys pursuant to 31 U.S.C. § 3730(d)(1) or N.C.G.S. § 1-610(d), Defendant shall, within 15 business days, pay to Relator's attorneys $84,930.33.

4(b). In full satisfaction of any claims Relator may have related to his employment with Defendant, including but not limited to any claims under 31 U.S.C. § 3730(h) or N.C.G.S. § 1-613, and in exchange for his agreement not to apply for employment with any entity owned, in whole or in part, by The Charlotte-Mecklenburg Hospital Authority, Defendant shall, within 15 business days, pay to Relator (through Relator's attorneys) $30,000. Defendant makes no representation as to the appropriate tax treatment of such amount. The parties agree that any tax liability shall be Relator's.

5. Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon Defendant's full payment of the Settlement Amount, the United States releases Defendant and the Contracted Hospitals, together with their predecessors, current and former parents, direct and indirect subsidiaries, and divisions, individually and collectively, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

6. Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon Defendant's full payment of the Settlement Amount, the State of North Carolina releases Defendant and the Contracted Hospitals, together with their predecessors, current and former parents, direct and indirect subsidiaries, and divisions, individually and collectively, from any civil or administrative monetary claim that North Carolina has for the Covered Conduct under the North Carolina False Claims Act, N.C.G.S. § 1-605, et seq., or the common law theories of payment by mistake, unjust enrichment, and fraud.

7. Subject to the exceptions in Paragraph 8 below, and conditioned upon Defendant's full payment of the Settlement Amount and the amounts set forth in Paragraphs 4(a)

and 4(b), Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, and Relator's attorneys, release Defendant and the Contracted Hospitals, together with their predecessors, current and former parents, direct and indirect subsidiaries, and divisions, individually and collectively, as well as their current or former owners, officers, directors, shareholders, attorneys, agents, and employees, individually and collectively, from any civil monetary claim the relator has on behalf of the United States for the Covered Conduct under the United States False Claims Act, 31 U.S.C. §§ 3729-3733 and the North Carolina False Claims Act, N.C.G.S. § 1-605, et seq. In addition, Relator and his attorneys release and discharge Defendant, the Contracted Hospitals, their predecessors, current and former parents, direct and indirect subsidiaries, and divisions, individually and collectively, as well as their current or former owners, officers, directors, shareholders, attorneys, agents, and employees, individually and collectively, from any and all claims, charges, actions, causes of action, sums of money due, suits, demands or liabilities whether known or unknown, fixed or contingent, that Relator may have or claim to have against them for any reason as of the Effective Date of this Agreement, including, but not limited to, any claims under 31 U.S.C. § 3730(h) or N.C.G.S. § 1-613.

8.  Notwithstanding the releases given in paragraphs 5, 6, and 7 of this Agreement or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a.  Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.  Any criminal liability;

    c.  Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

  d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

  e. Any liability based upon obligations created by this Agreement; and

  f. Any liability of individuals.

9. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 3, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States and the State of North Carolina, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 and N.C.G.S. § 1-605 and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

10. Conditioned upon receiving the payment set forth in Paragraphs 4(a) and 4(b), Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, and Relator's attorneys release Defendant and the Contracted Hospitals, together with their predecessors, current and former parents, direct and indirect subsidiaries, and divisions, individually and collectively, as well as their current or former owners, officers, directors, shareholders, attorneys, agents, and employees, individually and collectively, from any liability to Relator or Relator's attorneys arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) or N.C.G.S. § 1-610(d) (for expenses or attorney's fees and costs), or under 31 U.S.C. § 3730(h) or N.C.G.S. § 1-613 (for any retaliation claim).

11. Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth

Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

12. Defendant fully and finally releases the United States and the State of North Carolina, their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the United States or the State of North Carolina, their agencies, officers, agents, employees, and servants, related to the Covered Conduct and the Government's investigation and prosecution thereof.

13. In consideration of the obligation of the Relator set forth in this Agreement, Defendant fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

14. Conditioned upon Defendant's full payment of the Settlement Amount and the amounts set forth in Paragraphs 4(a) and 4(b), Relator agrees not to apply for employment with any entity owned, in whole or in part, by the Charlotte-Mecklenburg Hospital Authority, and Relator agrees that the Charlotte-Mecklenburg Hospital Authority is under no obligation to consider him for further employment. Should the Charlotte-Mecklenburg Hospital Authority receive an inquiry from an employer or prospective employer regarding Relator Mark McGuire, consistent with its personnel policies and the North Carolina Public Hospital Personnel Act (N.C.G.S. § 131E-257.2), and absent a court order or other lawful legal process, the Charlotte-

Mecklenburg Hospital Authority will provide only Mark McGuire's name, age, dates of employment, and position title.

15. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendant agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

16. Defendant agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendant, its present or former officers, directors, employees, shareholders, and agents in connection with:

        (1) the matters covered by this Agreement;

        (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

        (3) Defendant's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

        (4) the negotiation and performance of this Agreement; and

(5) the payment Defendant makes to the United States pursuant to this Agreement and any payments that Defendant may make to Relator, including costs and attorneys' fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by Defendant, and Defendant shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendant or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendant further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendant or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendant agrees that the United States, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and

penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendant or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendant or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

  d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendant's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17. Defendant agrees to cooperate fully and truthfully with the Government's investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendant shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendant further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

18. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraphs 5, 6, 7, 10, and 19 (waiver for beneficiaries paragraph) below.

19. Defendant agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

20. Upon receipt of the payment described in Paragraph 1, above, the United States and the State of North Carolina shall promptly sign and file a stipulation of dismissal of the Civil Action, with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1).

21. Upon receipt of the payments described in Paragraphs 1, 4(a), and 4(b), Relator shall promptly sign and file a stipulation of dismissal of the Civil Action, with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1).

22. With the exception of Relator's expenses, legal fees, and costs as agreed in Paragraph 4(a), each Party shall bear its own expenses, legal fees, and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

23. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

24. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of North Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

26. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

27. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

28. This Agreement is binding on Defendant's successors, transferees, heirs, and assigns.

29. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

30. All parties consent to the United States' and the State of North Carolina's disclosure of this Agreement, and information about this Agreement, to the public.

31. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 6-30-17     BY:  _/s/ Jonathan H. Ferry_
                        Jonathan H. Ferry
                        Assistant United States Attorney
                        Western District of North Carolina


DATED: _____   BY:  _____
                        Lisa M. Re
                        Assistant Inspector General for Legal Affairs
                        Office of Counsel to the Inspector General
                        Office of Inspector General
                        United States Department of Health and Human Services

## THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
Jonathan H. Ferry
Assistant United States Attorney
Western District of North Carolina

DATED: 6/27/17 BY: _Lisa M Re_____
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

13

**STATE OF NORTH CAROLINA**

DATED: 6/27/17    BY: *Charles H. Hobgood*
Charles H. Hobgood
Special Deputy Attorney General
Director, North Carolina Medicaid Investigations Division

**DEFENDANT**

DATED: 6/28/2017  BY: _____
Keith A. Smith
Executive Vice President and General Counsel
Carolinas HealthCare System

DATED: 6/28/2017  BY: _____
Mark Calloway
Alston & Bird LLP
Counsel for Defendant

14

DATED: 6/26/17    BY:    **RELATOR**
_____
Mark McGuire
Relator

DATED: 6/26/17    BY:    _____
Thomas Greene
Counsel for Relator

DATED: _____    BY:    _____
W. Thompson Comerford, Jr.
Counsel for Relator

16
Case 3:15-cv-00147-FDW-DCK   Document 18-2   Filed 06/30/17   Page 18 of 20

## RELATOR

DATED: _____   BY: _____
                       Mark McGuire
                       Relator


DATED: _____   BY: _____
                       Thomas Greene
                       Counsel for Relator

DATED: 6-29-17    BY: *W. Thompson Comerford by JKM*
                       W. Thompson Comerford, Jr.
                       Counsel for Relator

16

# EXHIBIT A

## Contracted Facilities

1. AnMed Health, Inc., including
    a. AnMed Health Medical Center
    b. AnMed Health Rehabilitation Hospital
    c. AnMed Health Women's and Children's Hospital
    d. AnMed Health Cannon
2. Blue Ridge Healthcare System, Inc., including
    a. Carolinas HealthCare System Blue Ridge – Morganton
    b. Carolinas HealthCare System Blue Ridge – Valdese
3. CareAlliance Health Services, including Roper Hospital
4. Columbus Regional Healthcare System
5. Moses H. Cone Memorial Hospital
6. MedWest Health System, Inc. (no longer contracted with CHS)
7. Murphy Medical Center, Inc.
8. Scotland Healthcare System, including Scotland Memorial Hospital
9. St. Luke's Healthcare Inc., including St. Luke's Hospital
10. Wilkes Regional Medical Center Hospital Operating Corporation, including Wilkes Regional Medical Center
11. Stanly Health Services, Inc. (owned by CHS as of March 1, 2014)